**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CRIMINAL ACTION NO. 17-30-1-DLB-CJS**

**UNITED STATES OF AMERICA**                                                        **PLAINTIFF**

**VS.**               **MEMORANDUM OPINION AND ORDER**

**TAVO SIMMONS**                                                                        **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**I.    Introduction**

This matter is before the Court upon Defendant's pro se motion to withdraw guilty plea (Doc. # 65). The United States having filed its response to the motion (Doc. # 72), the Court will adjudicate the motion without the need for a reply. For the reasons that follow, the motion is **denied**.

**II.    Relevant Facts**[1]

The Defendant was arrested on August 2, 2017 in Florence, Kentucky after agents with the Cincinnati DEA office received a tip from the Riverside, California DEA office that a group of individuals transporting heroin was staying at the Extended Stay Hotel on Turfway Road in Florence, Kentucky. Upon arriving at that location, undercover officers saw a white Volvo semi-truck with Indiana license plates parked in the side parking lot. At approximately 5:20 p.m., agents observed two black males (later identified as defendant

---

[1] These facts were gleaned from the criminal complaint filed in this case (Doc. # 3), oral admissions made by the Defendant during his rearraignment (Doc. # 68), and the representations made by the Assistant United States Attorney during that same guilty plea (*id.*)

1

Simmons and co-defendant Jason Renfro) exit the side door of the hotel and walk toward the semi-truck. Both men got into the truck and when they emerged, defendant Simmons was wearing a backpack. As they began walking back into the hotel, agents approached Simmons and Renfro. While Renfro stopped at the agents' direction, Simmons attempted to flee and discarded the backpack on the ground. Simmons was arrested a short time later. Located within the backpack was slightly less than one kilogram of cocaine. A search of the semi-truck uncovered another package underneath the lower bunk in the sleeper cab which was found to contain slightly less than one-half kilogram of heroin.

During his rearraignment, Simmons explained that Renfro drove to Kentucky with another individual named Ricky Powers in the semi-truck, while he flew in to Dayton, Ohio. Simmons also admitted that Powers owed him money from a failed, joint real estate venture, he came here to try to collect it, he knew that Powers sold cocaine and other drugs; that he went out to truck to get Powers's bag at Powers's request; that he knew that the bag contained cocaine when he discarded it and attempted to flee from the DEA agents. [*Id.*]

### III. Procedural History

After their arrest on August 2, 2017, Simmons and Renfro were charged in a Criminal Complaint on August 3, 2017 and made their initial appearance on August 4, 2017. Twenty days later they were indicted by the grand jury on August 24, 2017 and charged with conspiracy to distribute and possess with intent to distribute over 500 grams of cocaine and over 100 grams of heroin (Doc. # 15). Following a status conference held on November 22, 2017, and the filing of a pro se "Declaration of Status and Rights" (Doc. # 27), Simmons was ordered to be evaluated for competency (Doc. # 28). Undeterred,

Simmons persisted in his pro se filings (See Docs. # 39 & 48). Simmons' pro se notice (Doc. # 39) was denied on February 20, 2018 (Doc. # 41).

After receiving the competency report, which was filed under seal (Doc. # 46), the Court determined that Simmons was competent to stand trial during a hearing dated March 1, 2018. (Doc. # 45). In her report, Bureau of Prisons' Forensic Psychologist Judith Campbell noted that while Simmons refused to submit to psychological testing, his answers to written questions and their observations of him during the evaluation were sufficient for a diagnosis and competency finding (Doc. # 46). During the evaluation, Simmons acknowledged completing his GED in 1989 and that he had studied law and loves law books (*id.* at 3). He was also somewhat argumentative and oppositional with the examiner when discussing court proceedings (*id.* at 6). Ultimately, Dr. Campbell diagnosed Simmons with an unspecified personality disorder, with antisocial and narcissistic features. (*id.*) Because of this disorder, and his belief that he can interpret the law to his advantage, Dr. Campbell initially had some difficulty in engaging productively with him during her evaluation. Despite these initial hurdles, she ultimately found him to be competent to stand trial. (*id.* at 8).

During that March 1, 2018 hearing, the Court appointed a new attorney to represent the Defendant and, on March 2, 2018, attorney Frank Mungo was appointed to represent Simmons (Doc. # 47). Defendant reviewed the discovery with Mr. Mungo and ultimately decided to enter a guilty plea.[2]

---

[2] In the interim, two additional pro se pleadings were mailed from California and filed on behalf of Simmons (See Docs. # 48 & 51).

On April 13, 2018, Simmons pled guilty to conspiracy to distribute over 500 grams of cocaine (Doc. # 52). There was no written plea agreement. During the plea, Mr. Mungo described Simmons as competent, telling the Court "[h]e's sharp as a razor blade." (Doc. # 68 at 8). Mr. Mungo also shared that he and Simmons "get along great." (*id.* at 10). When asked about the incoherent filings being mailed from California, Defendant further acknowledged that that pipeline was "off" (*id.* at 3). Simmons further stated that he hadn't been made any promises from any person as part of his guilty plea (*id.* at 10-11).

Simmons further acknowledged that he had previously pled guilty in federal court in Pittsburgh, Pennsylvania (WD-PA) in 2009 to a cocaine conspiracy charge and served time for that offense in federal custody (*id.* at 11). When asked if he understood he was facing a ten (10) year minimum mandatory sentence as a result of the cocaine quantity here and his prior felony drug conviction, Simmons responded "[w]e've discussed it, yeah. We're good with that.... I'm good with that." (*id.* at 12). In fact, during the extensive plea colloquy with the Court, Simmons was very straightforward, saying "gotcha" several times, indicating his knowledge of everything the Court asked him.

On May 29, 2018, Simmons filed the current motion to withdraw his plea, forty-six (46) days after pleading guilty.

**IV. Analysis**

The Defendant has moved to withdraw his guilty plea, arguing that he "entered an involuntary guilty plea under threat, duress, and coercion due to fraud, misrepresentation and/or deliberate concealment by the government attorneys and court-appointed attorney. (Doc. # 65). In his motion, the Defendant raises two arguments: (1) his attorney, Frank Mungo, advised that his sentencing exposure would be greater (by "an additional

4

'TWENTY' years") if he did not plead guilty; and (2) the government concealed material evidence that it lacked both territorial jurisdiction and statutory authority to proceed. He also continues to assert that the Court lacks jurisdiction, and raises certain prerequisites that only apply in civil cases.[3]

The withdrawal of a guilty plea prior to sentencing is a matter "within the broad discretion of the district court," *United States v. Weldon*, 541 F.Supp.2d 890, 897 (E.D. Ky. 2006), aff'd, 275 Fed.App'x. 462 (6th Cir. 2008) (unpublished), and is governed by Rule 11 of the Federal Rules of Criminal Procedure. Rule 11(d) provides the circumstances under which a defendant may withdraw a guilty plea. Rule 11(d) provides, in relevant part:

> (d) Withdrawing a Guilty ... Plea. A defendant may withdraw a plea of guilty ...:
> (1) before the court accepts the plea, for any reason or no reason; or
> (2) after the court accepts the plea, but before it imposes sentence if:
> ...
> > (B) the defendant can show a fair and just reason for requesting the withdrawal.

In this case, since Defendant's guilty plea was accepted by the undersigned on April 13, 2018, the standard set forth in Rule 11(d)(2)(B) applies, that is, Defendant must show a fair and just reason for requesting the withdrawal.

The purpose of Rule 11(d) "is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996) (internal citation and quotation marks omitted). "When a defendant has entered a knowing

---

[3]. Similar such arguments were raised in the pro se notices previously sent from California and filed on his behalf.

and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006). *quoting United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)).

In considering Defendant's motion to withdraw his guilty plea, the Sixth Circuit has identified several factors which the Court must consider. These factors include – (1) the timeliness of the motion, (2) any reason for untimeliness, (3) assertion of innocence, (4) the circumstances surrounding the guilty plea, (5) the background of the defendant, (6) the defendant's exposure to the criminal justice system, and (7) prejudice to the government if the motion is granted. *Weldon*, 541 F. Supp. 2d at 897 (*citing United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)). These factors "are a general, non-exclusive list and no one factor is controlling." *Bazzi*, 94 F.3d at 1027. The defendant has the burden of establishing the existence of a fair and just reason supporting the withdrawal of the guilty plea. *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998). Upon reviewing each of these factors, individually and collectively, the Court concludes that Defendant's motion should will be **denied**.

**1. The Timeliness of the Motion**

Consideration of this factor favors denial of Defendant's motion. Defendant's guilty plea was entered on April 13, 2018. Forty-six (46) days elapsed between the Defendant's guilty plea and the filing of his pro se motion to withdraw his guilty plea. The Sixth Circuit has found similar delays to be excessive for purposes of withdrawing a guilty plea. *See United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (sixty-seven days); *United States*

v. *Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (fifty-five days); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (thirty-five days).

### 2. Reason for Untimeliness

Defendant Simmons, who has demonstrated a proficiency and propensity for filing pro se motions, has failed, in any way, to explain the delay. For someone who told Dr. Campbell that he "loves law books" and seems comfortable filing incoherent pleadings, the Court would have expected such a motion to be filed much sooner. The absence of a valid reason for failing to move for withdrawal earlier weighs in favor of denying his motion.

### 3. The Assertion of his Innocence

Simmons has failed to address this factor whatsoever in his motion. In fact, during his April 13, 2018 rearraignment, Simmons freely admitted his guilt. (Doc. # 68 at 24-30). When asked what happened which lead him to plead guilty, Simmons stated that Mr. Renfro drove to Kentucky in the semi-truck containing the drugs with another individual named Ricky Powers who owed Simmons money. Simmons freely admitted to knowing Powers sold cocaine and other drugs, that he went out to the truck with Renfro to get Powers's bag at Powers's request, that he knew that the backpack contained cocaine when he threw it down and fled from the DEA agents, and that he had also picked up money for Powers "a couple of times."

Although Simmons did not admit his guilt until approximately ten days before the case was scheduled for trial, his decision to plead guilty after being appointed new counsel six weeks earlier is not unlike those made by hundreds, if not thousands, of defendants every year in federal and state courts throughout the United States. Decisions to plead guilty late in the process are relatively routine and no special significance shall be afforded

7

to a Defendant who enters his guilty plea in that fashion.

While the Defendant has made multiple incoherent challenges to the Court's jurisdiction over him, there has never been an assertion of innocence by him which would compel the Court to conclude that consideration of this factor favors granting Defendant's motion. To the contrary, for all of these reasons, consideration of this factor weighs heavily in favor of denying the motion to withdraw guilty plea.

### 4. The Circumstances Surrounding the Guilty Plea

After placing Defendant under oath, the Court carefully discussed Defendant's options with him, including his rights to proceed with a trial in lieu of a guilty plea. Defendant further acknowledged that he reviewed the discovery with his attorney (Doc. # 68 at 5), and that he was satisfied with the advice Mr. Mungo had given him (*id.* at 9). Simmons also acknowledged that there were no issues outstanding between him and Mr. Mungo (*id.* at 10).

The record reflects that the Court took great care in questioning Defendant regarding his decision to enter a guilty plea and made sure he understood the possible consequences of the plea, including the minimum mandatory statutory penalty of ten years due to his prior federal cocaine conspiracy conviction from the Western District of Pennsylvania. The Court also ensured that no one had made any promises to him to induce him to plead guilty, Simmons responding "I haven't been made any promises from any person." (*id.* at 10-11). After ensuring that there was a sufficient factual basis for Defendant's guilty plea, the Court accepted the plea and scheduled sentencing for June 28, 2018.

In this case, Defendant's plea was knowingly and voluntarily entered and was not the product of duress. Nor was it a hastily entered plea made with unsure heart and

8

confused mind. For all of these reasons, this factor strongly favors denial of Defendant's motion to withdraw guilty plea.

### 5. The Background of the Defendant

This factor also favors denying the motion to withdraw guilty plea. Defendant is a 48 year old individual who previously obtained his GED while serving time in California. A self-proclaimed lover of law books, Defendant professes to know more about the law than the Court itself. Although he has filed several lengthy diatribes challenging the Court's jurisdiction over him, the Court believes that each one is merely an attempt to avoid responsibility for his actions. The Court's observations of him during the April 13, 2018 rearraignment as compared to prior court appearances where he continuously took issue with the Court's jurisdiction lead the Court to conclude that Mr. Simmons should be nominated for an academy award of sorts for those performances. More specifically, when the Court noted the "sea change" from prior court appearances, Defendant just smiled and confirmed that the pipeline of filings from California was "off." (Doc. # 68 at 2-3).

For these reasons, Defendant's background favors denial of Defendant's motion to withdraw guilty plea.

### 6. Defendant's Prior Exposure to the Criminal Justice System

This factor most definitely favors denial of Defendant's motion. In addition to the aforementioned prior federal drug conviction from Pittsburgh, according to Defendant's PSR, he has four other convictions from California, at least one of which, grand theft, is a felony. Mr. Simmons is no stranger to the criminal justice system.

Based on his prior experiences with the criminal justice system, and more specifically federal court in Pittsburgh, he is familiar with how guilty pleas are obtained and

9

the possible ramifications of entering a plea. Mr. Simmons is intimately familiar with the federal criminal justice system as he was charged with essentially the same crime in July 2007 and resolved it in precisely the same way, that is, by pleading guilty. His experience with the criminal justice system makes it much more likely that he understood the finality of entering a guilty plea.

For all of these reasons, this factor favors denial of Defendant's motion to withdraw guilty plea.

### 7. Prejudice to the Government if the Motion is Granted

The final factor also favors denial of the motion, albeit less strongly. Although Defendant does not address this factor in his motion, there could be some prejudice to the United States if he was permitted to withdraw his guilty plea. However, because the evidence related to the case is likely still available, any prejudice would be slight. In the final analysis, consideration of this factor weighs slightly in favor of denying the motion.

### 8. Additional Ground for Denial

Finally, Defendant's motion is based upon legal arguments that simply have no support or application in this context. As noted by the United States, the Sixth Circuit addressed, in relatively short order, many of these same arguments in *United States v. Pryor*, 842 F.3d 441 (6th Cir. 2016). Pryor also challenged the court's jurisdiction. However, the Sixth Circuit disagreed, noting that 21 U.S.C. § 841(a)(1) and 846 were federal statutes "properly passed by Congress that provide this Court with federal-question subject-matter jurisdiction." *Id.* at 447-48; citing 18 U.S.C. § 3231 (2012). Pryor also alleged that the government lacked standing because there was no injured party; again the Sixth Circuit noted that "[t]here is standing…because 'the injury to [the United States']

10

sovereignty arising from violation of its laws ... suffices to support a criminal lawsuit by the Government.'" Finally, Pryor argued that the court did not have personal jurisdiction over him either; unpersuaded, the Sixth Circuit held that "[f]ederal courts have personal jurisdiction over criminal defendants before them, whether or not they are forcibly brought into court." *Id.* at 448 *citing United States v. Alvarez–Machain*, 504 U.S. 655, 660–62 (1992).

### V.     Conclusion

Although the prejudice factor does not strongly favor denying Defendant's motion to withdraw his guilty plea, the remaining six factors weigh strongly against granting the motion. Moreover, because the record reflects that Defendant's April 13, 2018 guilty plea was neither hastily entered nor made with unsure heart or confusion, there is no basis for withdrawal. Because Defendant has failed to establish the existence of a fair and just reason to withdraw his plea under the applicable Sixth Circuit standards, and for the reasons stated herein,

**IT IS ORDERED** as follows:

1.     Defendant's Motion to Withdraw Plea (Doc. # 65) be, and it is, hereby **denied**;

2.     Defendant's **sentencing** remains scheduled for **June 28, 2018 at 1:00 p.m.** at Covington, Kentucky.

This 25th day of June, 2018.



Signed By:
David L. Bunning  DB
United States District Judge

K:\DATA\ORDERS\Covington Criminal\2017\17-30-1 Order denying DE 65.wpd